**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNIVERSAL INSTRUMENTS**
**CORPORATION,**

                    **Plaintiff,**

                    **v.**

**MICRO SYSTEM ENGINEERING,**
**INC. et al.,**

                    **Defendants,**
_____

      **3:13-cv-831**
      **(GLS/DEP)**

## SUMMARY ORDER

Plaintiff Universal Instruments Corporation commenced this action against defendants Micro System Engineering, Inc. (MSEI) and Missouri Tooling & Automation (MTA) alleging copyright infringement and New York state law claims for the wrongful use of its source code. (*See generally* 3d Am. Compl., Dkt. No. 103.) Specifically, Universal alleges MSEI wrongfully provided the source code to MTA to make test handling systems (THS) for the testing of MSEI products, namely, pacemakers and defibrillators. (*Id.* ¶¶ 7-8, 109, 152-57, 161-62.) After lengthy discovery and motion practice, the case proceeded to a jury trial on the surviving claims. Breach of contract, misappropriation of trade secrets, and copyright infringement

claims remained against MSEI. (Dkt. No. 228 at 37.) As against MTA, unjust enrichment, unfair competition, misappropriation of trade secrets, and copyright infringement claims remained. (*Id.*)

At trial, Universal rested after five days. Thereafter, MSEI and MTA moved under Rule 50 of the Federal Rules of Civil Procedure for judgment as a matter of law. (Dkt. Nos. 391-93.) The court reserved on the motions and, following the close of defendants' case, orally granted their motions. This summary order supplements the court's oral ruling.

In their motions, MSEI and MTA argue that they are entitled to judgment as a matter of law for a host of reasons. (Dkt. Nos. 391-93.) First, defendants assert that the state law claims against them are preempted by the federal Copyright Act. (Dkt. No. 391 at 4-5; Dkt. No. 392 at 3-9.) Second, defendants contend that "there is no evidence to support" the claims against them, including the Copyright Act. (Dkt. No. 391 at 5-11; Dkt. No. 392 at 9-12; Dkt. No. 393 at 1-4.) Finally, defendants maintain that Universal's claim for damages fails as a matter of law because: (a) the governing contract, the Equipment Purchase Agreement (EPA), precludes such recovery under its limited liability provision, (D-1 § 10); (b) damages from the defendants' lost profits, future lost profits, and labor savings are

2

speculative; and (c) statutory damages under the Copyright Act are unavailable for works registered after the action commenced. (Dkt. No. 391 at 11-13; Dkt. No. 392 at 12-13.) Universal opposes all of these arguments. (Dkt. Nos. 394-95.)

The Rule 50 standard allows the court to grant judgment as a matter of law "[i]f [a] party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for th[at] party on that issue." Fed. R. Civ. P. Rule 50(a)(1). "Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in [its] favor." *Galderi-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998); *see Stevens v. Rite Aid Corp.*, 851 F.3d 224, 228 (2d Cir. 2017).

The parties have had an ample opportunity to advance all of the arguments they cared to address in connection with this motion. Aside from arguments regarding the sufficiency of the evidence, all of the issues have previously been raised and briefed in the parties' pre-trial motions. (Dkt. Nos. 305, 312, 318, 321, 328-29, 345, 349, 354, 364-66.) In addition

to the parties' written submissions, the court entertained oral argument at various points in time both at its pre-trial conference and during trial, all of which it has carefully considered. (Dkt. No. 378 at 17-51, 55-57.)

After reviewing all the submissions, both written and oral, the court concurs with defendants MSEI and MTA that no reasonable jury viewing the evidence in the light most favorable to Universal could support any of its claims. The dispositive issue underlying all of the claims is whether MSEI was authorized, whether by ownership or by license, to use Universal's source code.

There is no doubt that Universal had intellectual property rights in its source code. At the same time, there is no doubt that Universal provided its source code to MSEI either pursuant to the license in EPA § 8.2(d), (D-1 § 8.2(d)), or unconditionally as memorialized in the Final Customer Acceptance letter (FCA), (D-2), which the court finds is expressly incorporated into the EPA, (D-1 §§ 14, 16.1(e), 16.2).

To be sure, Universal's own managers and engineers testified that MSEI had a license to use Universal's pre-existing intellectual property. Jean Luc Pelissier, Universal's Chief Executive Officer, Keith O'Leary, Universal's Chief Financial Officer, Bonnie Lundy, Universal's manager of

4

intellectual property and contracts, Daryn Evans, Universal's electrical and software engineer who created the Polaris Junior platform, and Kevin Ford, Universal's technical manager who was involved in the creation of the THS1A line for MSEI, all agree.  Furthermore, the executed FCA expressly states:

> Unovis [a division of Universal] agrees to provide the THS server source code as is with the understanding that MSEI assumes the risk of invalidating the warranty in the event a change made by MSEI to the source code causes damage to any of the THS line hardware.  (D-2.)

Indeed, Francois Caudrillier, a former Universal project manager who created and designed the THS1A line and negotiated the FCA for Universal, testified that the only restriction on the source code when it was provided to MSEI was that MSEI waived its warranty protection on the THS if it made changes to the source code.  In addition, Carlos Takahashi, who executed the FCA for Universal, emailed Juergen Lindner, MSEI's General Manager, on the same day he signed the FCA and stated, "[a]ccording to the teleconference with your teams and our own ones, it seems we are ready to let you assume ownership of the line."  (D-211.)  Viewing this evidence in the light most favorable to Universal, no reasonable jury could

5

find that MSEI did not own or have a license to Universal's source code.

The collapse of Universal's case rests on its failure to offer evidence that MSEI exceeded the scope of the license in section 8.2(d) of the EPA. (D-1 § 8.2(d).) The license provides:

> If [Universal] uses any Pre-Existing Intellectual Property in connection with this Agreement, [Universal] hereby grants MSEI, MSEI's subcontractors, or suppliers, a non-exclusive, royalty-free, worldwide, perpetual license to, use, reproduce, display, of the Pre-Existing Intellectual Property for MSEI's internal use only. (*Id.*)

Specifically, there is no reasonable view of the evidence that MSEI used Universal's source code for anything other than its internal use. First, there is no evidence that MSEI provided the source code to anyone other than MTA. Second, there is no evidence to suggest that MTA was anything other than MSEI's subcontractor or supplier. (D-15; D-141.) Additionally, Universal has adduced no evidence that MTA used the source code in anything other than MSEI's THS lines. Finally, Universal has offered no evidence that MTA had knowledge that MSEI was not authorized to use or share the source code. Rather, all of the evidence is to the contrary.

The resolution of these issues are dispositive of all of the claims. *See Smith v. Barnesandnoble.com*, 839 F.3d 163, 166-67 (2d Cir. 2016)

(explaining that, with respect to copyright infringement, "[w]here . . . the existence of [a] license is undisputed, and the only contested issue is its scope, the copyright owner bears the burden of proving that the defendant's conduct was unauthorized under the license"); *Selective Ins. Co. of Am. v. Cty. of Rensselaer*, 26 N.Y.3d 649, 655 (2016) ("Unambiguous provisions of a[] . . . contract must be given their plain and ordinary meaning." (internal quotation marks, citation, and alteration omitted)). Universal failed to demonstrate that MSEI was not authorized to use Universal's source code and that it exceeded the scope of the license in the EPA by providing the source code to MTA. Therefore, Universal failed to show a breach of the EPA or misappropriation of the source code.

Setting aside Universal's failure of proof, a variety of arguments have been advanced by MSEI and MTA to support their Rule 50 motions, all of which the court adopts.[1] (Dkt. Nos. 391-93.) For instance, the court

---

[1] Although the court need not trek into the availability of certain damages because Universal failed to establish liability, it also agrees with defendants that the lost profit and future lost profit damages which Universal seeks to recover are either precluded by the limited liability provision of the EPA, (D-1 § 10), or are speculative. *See My Play City, Inc. v. Conduit Ltd.* 589 F. App'x 559, 562 (2d Cir. 2014); *On Davis v. The Gap Inc.*, 246 F.3d 152, 160 (2d Cir. 2001). Simply put, Universal presented scant evidence on the causal nexus between the alleged infringement, breach, or wrongful act and either MSEI or MTA's profits or future profits, and no reasonable jury could find in its favor.

Furthermore, the court concurs that Universal's copyright infringement claim is barred by the statute of limitations. *See* 17 U.S.C. § 507(b) (stating civil copyright actions must be commenced within three years after the claim accrues); *Gary Friedrich Enters., LLC v. Marvel*

agrees that the Copyright Act preempts all of Universal's state law claims in this case. *See Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305-06 (2d Cir. 2004). That issue alone would substantially reduce the scope of Universal's claims, but, as the court has already explained, the failure of proof is dispositive regardless of how some of the fringe issues are resolved. Therefore, the Rule 50 motions are granted and the Clerk is directed to enter judgment in favor of MSEI and MTA.

The court notes that, throughout this litigation, Universal has shifted its theory of liability and, as recently as trial, has advanced theories which contradict its operative pleading. (*See generally* 3d Am. Compl.) As a result, Universal has made the court's task overwhelmingly difficult and, as highlighted by the outcome of this case, pursued costly litigation with no return to date.

---

*Characters, Inc.*, 716 F.3d 302, 316-17 (2d Cir. 2013) (explaining that a copyright infringement claim accrues when "a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." (internal quotations and citations omitted)). There is no reasonable view of the evidence that Universal did not know of MSEI's ownership claim of the source code well before July 15, 2010 (three years before Universal filed suit). (D-2; D-5; D-85; D-86; D-132; D-179; P-400.)

For similar reasons, Universal's misappropriation of trade secrets claim is also time barred. *See Synergetics USA, Inc. v. Alcon Labs., Inc.*, No. , 2009 WL 2016872, at *2 (S.D.N.Y. July 9, 2009) (noting a three year statute of limitations from the time a defendant discloses a trade secret or first uses a plaintiff's ideas (citing *Andrew Greenberg v. Svane, Inc.*, 36 A.D.3d 1094, 1098 (3d Dep't 2007)). Again, it is undisputed that MSEI disclosed Universal's source code to MTA before July 15, 2010. (D-15; D-141.)

8

Accordingly, it is hereby

**ORDERED** that MSEI and MTA's motions for judgment as a matter of law (Dkt. Nos. 391-93) are **GRANTED**; and it is further

**ORDERED** that the Clerk is directed to enter judgment in favor of MSEI and MTA; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Summary Order to the parties.

**IT IS SO ORDERED.**

August 8, 2017
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
U.S. District Judge