UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNIVERSAL INSTRUMENTS CORPORATION, | ) ) ) ) ) |
| Plaintiff, | ) Case No.: 3:13 CV-831 (GLS/DEP) ) ) |
| v. | ) ) |
| MICRO SYSTEMS ENGINEERING, INC., and MISSOURI TOOLING & AUTOMATION, | ) **DECLARATION OF DAVID P. COOPER** ) ) ) ) |
| Defendants. | ) ) ) ) ) |

I, DAVID P. COOPER, hereby declare and state as follows:

1. I was one of the attorneys representing Defendants Micro System Engineering, Inc. ("MSEI") and Missouri Tooling & Automation ("MTA") (collectively, "the Defendants") in the above-captioned civil action, and submit this declaration in support of Defendants' Application for Attorneys' Fees Pursuant to this Court's February 7, 2018 Order (Dkt. No. 421) granting in part Defendants' motion for attorneys' fees and costs. (Dkt. Nos. 410-412.)

2. I am a shareholder of Kolisch Hartwell P.C. ("Kolisch Hartwell") of Portland, Oregon. I was admitted to the State Bar of Wisconsin in 1987 and the Oregon State Bar in 1988. I was admitted *pro hac vice* to represent Defendants in this matter on November 12, 2013.

Page 1 –    Declaration of David P. Cooper

3.      I headed Defendants' litigation defense team up until the end of February 2017 when MSEI retained Sullivan & Cromwell LLP and MTA retained Kaplan Rice LLP.  After those firms were retained, my role and the role of my firm became very limited and neither I nor any other lawyer in my firm participated in any way in the trial of this action last summer.  It is my understanding that the instant application for fees is limited, insofar as it reflects fees rendered by my firm, to the period of our retention as attorneys for Defendants in August 2013 through February 28, 2017.

4.      In addition to myself, the team from Kolisch Hartwell included Owen W. Dukelow, Desmond J. Kidney, and certain paralegals and contract attorneys.  I have practiced Intellectual Property ("IP") law for over 30 years, and Mr. Dukelow and I have worked together on IP litigation for more than 20 years.  Mr. Kidney joined my firm in 2012, and he has assisted Mr. Dukelow and I since that time with several IP litigation matters.  We have litigated IP cases in several jurisdictions throughout the U.S., and have conducted litigation through trial and appeal.

5.      Our defense team also included the following paralegals:  Josie Cervantes, Mark Dunglinson, and Charles Landriault, who performed litigation support work related to filing, service, document preparation and other discovery related tasks including docket management.  In connection with the review of the substantial number of documents during discovery, we also used a team of contract attorneys.

6.      The litigation began when Universal Instruments Corporation ("Universal") filed its original complaint on July 15, 2013.  (Dkt. No. 1.)  That complaint alleged trade secret misappropriation, breach of contract, and several ancillary claims.  It concerned a 2007 contract, with a face value of $1.05 million, between Universal's division, Unovis Solutions, and MSEI, in

Page 2 –      Declaration of David P. Cooper

which Unovis would manufacture a so-called Test Handling System ("THS") to MSEI's specifications.

7.  On November 18, 2014, Universal filed a first amended complaint that added a count for software copyright infringement pertaining to software associated with the THS, alleging infringement of five copyright registrations. (Dkt. No. 63.)

8.  On June 16, 2015, Universal filed a second amended complaint that added three additional copyright registrations, making eight total, to the count for software copyright infringement pertaining to software associated with the THS. (Dkt. No. 93.)

9.  On September 29, 2015, Universal filed a third amended complaint that added 22 additional copyright registrations, making 30 total, to the count for software copyright infringement pertaining to software associated with the THS. (Dkt. No. 103.)

10. This action was legally and factually complex, in part because Universal changed it from trade secret/contract litigation to software copyright/trade secret/contract litigation involving 30 overlapping copyright registrations. Universal's ever-shifting theory of liability made analyzing Universal's claims and Defendants' potential defenses very time consuming.

11. The litigation was also factually complex because it concerned facts over a lengthy period of time. In the discovery phase of the litigation, the parties produced a total of 1,178,663 pages of documents, and 41 depositions were taken of 29 witnesses.

12. With respect to depositions of Defendants' witnesses, those included current and former employees of Defendants located in several different states, including Oregon and Missouri, where MSEI and MTA are located, respectively.

13. Expert discovery included technical and damages expert reports and depositions. We retained and worked with two rebuttal experts, Timothy Rickard (Defendants' software expert) and Bruce Blacker (Defendants' damages expert). With respect to damages, in the period May 2016 through August 2016, Universal served three expert reports from its damages expert Scott Hampton, with shifting theories and calculating different damages amounts. In his May 31, 2016 report, Mr. Hampton opined that the proper measure of damages was up to $3.1 million under various theories, including Universal's "lost profits," MSEI's supposed "savings" by working with MTA, and MSEI's "projected" "saving on labor expenses" from using robots instead of humans to move components between testing stations. A month later, on June 30, 2016, Mr. Hampton submitted a second report in which he added calculations for "future" damages which increased Universal's lost profit damages to $5.31 million and Universal's "labor savings" damages up to $5.93 million.

14. On August 3, 2016, Mr. Hampton submitted a purported "rebuttal" report where he, for the first time, asserted that MSEI's profits from its sales of pacemaker and defibrillator components was a potential measure of Universal's damages here, asserting that Universal should be awarded at least $22 million under this theory. And at his August 26, 2016 deposition, Mr. Hampton asserted that the "appropriate damage number" in this case was $418 million, the full amount of MSEI's total revenues for the period 2011 to 2015 for products tested on the allegedly infringing lines.

15. We also prepared and filed substantive motions, including (i) two motions to dismiss (Dkt. Nos. 80, 83, 97, 99), (ii) a motion to strike portions of Universal's Third Amended Complaint (Dkt. No. 107), and (iii) a cross-motion for summary judgment (Dkt. No. 196, 217).

16. We billed MSEI contemporaneously with the legal services we performed from August 2013 through February 28, 2017, around the time when MSEI chose to engage the law firm Sullivan & Cromwell LLP as trial counsel and MTA chose to engage the firm of Kaplan & Rice as its trial counsel. With respect to our billing practices, we do not bill clients for travel time, however, we bill for time we spend doing legal work while traveling.

17. Attached hereto as Exhibit A are the invoices submitted for the period August 2013 through February 2017. These invoices are based on contemporaneous records of the work that was done.[1] The total attorneys' fees billed by my law firm in the period August 2013 through February 2017 was $2,434,784.96. This represents a total of 10,231 hours worked on the matter at hourly rates from $95 to $485 for that period. All of this was paid by the client. I understand that Defendants are not seeking reimbursement for the fees associated with the work that I performed on the matter, which totaled $1,109,358.50. As a result, the Kolisch Hartwell fees relevant to this Application are $1,325,426.46, a reduction of about 46% on the fees actually paid during the period August 2013 through February 2017. My entries have been redacted in full from the invoices attached as Exhibit A. In addition, some of the entries have been redacted, as indicated by "PRIVILEGE REDACTED," to protect the attorney-client privilege or attorney work product.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: February 23, 2018                    /s/ David P. Cooper
                                                                                       David P. Cooper

---

[1] Work done by Kolisch Hartwell on the companion case, MSEI v. Universal (13-CV-1144) was logged and billed separately from the time logged and billed to this action. As a result, none of the entries on Exhibit A are for work done on the companion case.