**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____ )
)
UNIVERSAL INSTRUMENTS                    )
CORPORATION, a Delaware Corporation,     )
)
                          Plaintiff,     )
v.                                       )          **CASE NO. 3:13-CV-831 (GLS/DEP)**
)
MICRO SYSTEM ENGINEERING, INC.,          )
an Oregon Corporation and MISSOURI       )
TOOLING & AUTOMATION, a Missouri         )
Corporation,                             )
)
                          Defendants     )
_____ )


**<u>PLAINTIFF UNIVERSAL'S MEMORANDUM OF LAW IN OPPOSITION TO</u>**
**<u>DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ........................................................................................................3

I.    Defendants' Requested Fees Related to Their Representation by Kolisch Hartwell Should Be Reduced by 50% ..................................................3

    A.    Hours Related to Bad-Faith Conduct Should be Excluded From The Fee Award...........................................................................................4

    B.    Hours Related to Unsuccessful Pleadings Should be Excluded From The Fee Award ..................................................................................6

    C.    Hours Related to Clerical Work should be Excluded From The Fee Award .................................................................................................7

    D.    Hours Spent by Kolisch Hartwell Related to MSEI's Case vs. Universal Should be Excluded from the Fee Award. ...................................8

    E.    Hours Spent by Kolisch Hartwell Related to Trial Preparation Should be Excluded From the Fee Award ..................................................8

    F.    A Percentage Reduction is Warranted Due to the Prevalent Deficiencies in the Kolisch Hartwell Billing Entries..........................................8

II.    Defendants' Trial Counsel's Requested Attorney's Fees Should Be Reduced Because the Hourly Rates Are Unreasonable. ........................................10

    A.    Defendants Have Failed to Show that No Firms in the District Were Willing or Able to Take the Case ..................................................11

    B.    Numerous Local Firms Possess Complex Intellectual Property Litigation and Trial Expertise ................................................................13

    C.    Defendants Supplemental Arguments in Support of Out-of-district Rates are not Persuasive ........................................................................14

    D.    The Prevailing Rates in this Forum are Substantially Lower than the Rates of Defendants' Counsel..............................................................16

III.    Defendants' Trial Counsel Fees Should Be Further Reduced After the Application of In-District Rates....................................................................18

    A.    Defendants' Trial Counsel Fees Should Be Reduced Based on the Excessive Number of Attorneys and Staff Used in Preparation of and During Trial ..........................................................................................19

    B.    Defendants' Trial Counsel Fees Should Be Reduced Based on Costs of Getting up to Speed....................................................................21

    C.    Defendants' Trial Counsel Fees Should Be Reduced Based on Deficient Billing Procedures..............................................................22

    D.    Defendants' Trial Counsel Fees Should Be Reduced Based on Unsuccessful Motions Brought................................................................23

    E.    Defendants' Trial Counsel Fees Should Be Reduced Based on Hours Spent on State Law Claims that are Ineligible for Fee Shifting ...............24

IV.    Conclusion ..........................................................................................25

## **TABLE OF AUTHORITIES**

**Cases**

*Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784 (5th Cir. 2017) ........................................................ 24

*Aldridge v. Brodman*, 100 A.D.3d 1537 (4th Dep't 2012) ............................................................. 25

*Angiodynamics, Inc. v. Biolitec, Inc.*, Case No. 1:08-cv-00004-LEK-RFT
(N.D.N.Y. 2012) ......................................................................................................................... 13

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,
493 F.3d 110 (2d Cir.2007)....................................................................................................... 3

*Banco Popular N. Am. v. Lieberman*, 75 A.D.3d 460, 905 N.Y.S.2d 82 (2010)........................ 25

*Barbagallo v. Marcum LLP*, 2012 WL 1664238 (E.D.N.Y.) ......................................................... 25

*Bergerson v. New York State Office of Mental Health, Central New
York Psychiatric Center*, 652 F.3d 277 (2d Cir. 2011) ............................................................. 10

*Berkshire Bank v. Tedeschi*, 2015 WL 235848 (N.D.N.Y. 2015) ................................................. 7

*Bowen v. Stephenson*, 2014 WL 6610041 (N.D.N.Y. 2014) ......................................................... 9

*Broad. Music, Inc. v. N. Lights, Inc.*, 555 F. Supp. 2d 328 (N.D.N.Y. 2008) ............................... 3

*C.G. v. Ithaca City Sch. Dist.*, 2012 WL 4363738 (N.D.N.Y. 2012) ............................................ 19

*Ceglia* v. *Zuckerberg*, 2012 WL 1574747, at *3 (W.D.N.Y. 2012) ............................................... 15

*Central Grp. Int'l, L.L.C. v. New York One Cafe Inc.*, 2007 WL 869587 at *10
(E.D.N.Y. 2007)......................................................................................................................... 21

*Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053 (2d Cir. 1989)................. 15

*Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593 (7th Cir. 1999) ........................................... 5

*DeMarco v. Ben Krupinski Gen. Contractor, Inc.*, 2014 WL 3696020
(E.D.N.Y. 2014)................................................................................................................. 6, 7, 23

*Diplomatic Man, Inc. v. Nike, Inc.*, 2009 WL 935674 (W.D.N.Y. 2009).................................... 14

*Erickson Prods., Inc. v. Only Websites, Inc.*, 2016 WL 1337277 (S.D.N.Y. 2016) .................... 18

*Frink Am., Inc. v. Champion Rd. Mach. Ltd.*, 48 F. Supp. 2d 198 (N.D.N.Y. 1999) .................. 14

*Ganci v. U.S. Limousine Serv. Ltd.*, 2015 WL 1529772 (E.D.N.Y. 2015) .................................. 21

*Gen. Elec. Co. v. Compagnie Euralair, S.A.*, 1997 WL 397627 (S.D.N.Y. 1997)...................... 19

*Gevorkyan v. Judelson*, 2015 WL 6508324 (S.D.N.Y. 2015) ..................................................... 25

*Green v. City of New York*, 403 F. App'x 626 (2d Cir. 2010) ..................................................... 11

*Hair Say, Ltd. v. Salon Opus, Inc.*, 800 N.Y.S.2d 347 (Sup. Ct. Nassau County 2005) ............. 25

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ................................................................................. 6

*Hines v. City of Albany*, 613 F. App'x 52 (2d Cir. 2015)............................................................ 10

*Houston v. Cotter*, 234 F. Supp. 3d 392 (E.D.N.Y. 2017).......................................................... 18

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226 (2d Cir. 1987) ......................................... 19

*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149 (2d Cir. 1998) ..................................................... 8, 9, 18, 21

*Kwan v. Schlein*, 441 F. Supp. 2d 491 (S.D.N.Y. 2006)............................................................. 14

*Levine v. Landy*, 832 F. Supp. 2d 176 (N.D.N.Y. 2011) ............................................................ 13

*Levy v. Powell*, 2005 WL 1719972, at *7 (E.D.N.Y 2005) .......................................................... 9

*Mackenzie Architects, PC v. VLG Real Estates Developers*, LLC,
2016 WL 4703736 (N.D.N.Y. 2016) ....................................................................................... 13

*Malibu Media, LLC v. Ofiesh*, 2017 WL 2633526, at *3 (N.D.N.Y. 2017) ................................ 17

*Member Services Inc. et al. v. Security Mutual Life Insurance Co.
of New York et al.*, 3:06-cv-01164-DEP (N.D.N.Y. 2011) ...................................................... 13

*Meyler v. Comm'r of Soc. Sec.*, 2008 WL 2704831, at *3 (D.N.J. 2008) ....................................... 5

*Millea v. Metro North*, 658 F.3d 154 (2d Cir. 2011) ...................................................... 24, 25

*Mugavero v. Arms Acres, Inc.*, 2010 WL 451045 (S.D.N.Y. 2010) ...................................... 5, 9

*Noel v. New York State Office of Mental Health Cent. New York Psychiatric Ctr.*,
    2008 WL 11355380 (N.D.N.Y. 2008) ........................................................ 6

*Osterweil v. Bartlett*, 92 F. Supp. 3d 14 (N.D.N.Y. 2015) .......................................... 10

*Paramount Pictures Corp. v. Hopkins*, 2008 WL 314541 (N.D.N.Y. 2008) ......................... 13

*Pope v. City of Albany*, 2015 WL 5510944 (N.D.N.Y. 2015) ............ 10, 11, 12, 15, 18, 19, 20, 23

*PPC Broadband, Inc. d/b/a PPC v. Corning Optical Communications*
    *RF, LLC*, 5:11-cv-00761-GLS-DEP (N.D.N.Y. 2015) ......................................... 13

*Richie v. Gano*, 754 F. Supp. 2d 605 (S.D.N.Y. 2008) .............................................. 24

*Scanlon v. Kessler*, 23 F. Supp.2d 413 (S.D.N.Y. 1998) ........................................... 24

*Simmons v. New York City Transit Auth.*, 575 F.3d 170 (2d Cir. 2009) ......... 10, 11, 12, 14, 15, 16

*Stevens v. Rite Aid Corp.*, 2016 WL 6652774 (N.D.N.Y. 2016) .................................... 9

*Themis Capital v. Democratic Republic of Congo*, 2014 WL 4379100
    (S.D.N.Y. 2014) ..................................................................... 17

*Trs. of the Bricklayers v. Helmer–Cronin Constr., Inc.,* 2005 WL 3789085
    (S.D.N.Y. 2005) ..................................................................... 9

*United States ex rel. Rubar v. Hayner Hoyt Corp.*, 2018 WL 566448, at *7
    (N.D.N.Y. 2018) ................................................................. 9, 17

## Statutes

17 U.S.C. § 505 ....................................................................... 3

## Rules

Federal Rules of Civil Procedure Rule 37(a)(5)(A) ....................................... 3

Federal Rules of Civil Procedure Rule 37(b)(2)(C) ....................................... 3

Universal Instruments Corporation ("Plaintiff") respectfully submits this Memorandum of Law in Support of its Opposition to Micro Systems Engineering, Inc.'s and Missouri Tooling & Automation's (collectively "Defendants") Application for Attorney's Fees Pursuant to This Court's February 7, 2018 Order. This Memorandum is accompanied by a Declaration of Victor J. Baranowski ("Baranowski Decl.") dated March 2, 2018.

## PRELIMINARY STATEMENT

Defendants ask the Court to grant a staggering $6,404,214.68 in attorney's fees – $5,078,788.22 of which is for five months' worth of work on what concluded in a 6 day trial. To accumulate such high fees took extraordinary billing rates – with lead counsel billing at $1700 per hour, most partners well over $1,000 per hour, associates approaching $1,000 per hour, and legal assistants, research librarians, and e-discovery technicians billing over $350 per hour.

To justify these rates, Defendants put forth arguments that are fundamentally at odds with the arguments previously made by Defendants and accepted by the Court. On the one hand, Defendants have argued to this Court that there was no "reasonable view of the evidence [that] supported Universal's claims," and that "a reasonable copyright attorney would not have filed a complaint…." Dkt. No. 422, at 1. Despite the simplicity with which Defendants previously characterized Plaintiff's case, Defendants now argue that no law firms in the entire Northern District would have been able to handle the case due to the "complex legal and technical issues" presented. Dkt. 422-1 at 4, ¶13. The Defendants should not have it both ways.

In addition to extraordinary billing rates clearly surpassing the rates in the Northern District, Defendants also used a wholly unnecessary number of legal professionals. Defendants used an astounding 86 total professionals for which they are now requesting fees. Sullivan & Cromwell ("S&C") utilized 9 attorneys, 16 legal assistants, 9 research librarians, and 11 e-

discovery technicians and technical services personnel totaling over 7,000 hours during their 5 month period of representation.  Baranowski Decl. ¶¶ 3–4; *id.* at Schedule A.

Defendants also wrongly place the blame at Universal's feet for the case failing to settle. *See* Dkt. No. 422 at 8.  In fact, it was Defendants who refused to discuss settlement throughout the entire discovery period.  *See* Baranowski Decl. ¶¶ 5–6.  During the Court-ordered mediation, Defendant MSEI's President, Juergen Lindner, refused to enter the same room as the representative for Universal.  *Id.* at ¶ 5.  Even during trial, Defendants failed to provide any counter-offer to a settlement offer made by Universal.  *Id.* at ¶ 6.

Further, it was Defendants who "unnecessarily increased the time and resources expended on this litigation" through being wholly uncooperative during discovery.  This Court has acknowledged what Magistrate Judge Peebles described as Defendants' "bad faith," "gamesmanship," "uncooperative," and "delayed tactics."  *See* Dkt. No. 273 at 14, 26 (denying Defendants' request for fees and costs in relation to Plaintiff's motion to compel). Defendants were not forthcoming in responding to "legitimate discovery requests" or in "producing documents, witnesses, and information."  *Id*. at 26.  Defendants were sanctioned multiple times during discovery for their behavior.[1]

Plaintiff requests: 1) adjustments to the post-summary judgment trial counsel's billing rates to make their rates commensurate with accepted reasonable rates in the Northern District; 2) an additional 50% reduction to the fee award for both pre-summary judgment counsel and post-summary judgment trial counsel based on the tactics throughout discovery, the excess of professionals working on the case, the time new counsel had to spend to get up to speed, vague and block billing entries, and entries that are ineligible for fee shifting.

---

[1] *See* Dkt. Nos. 64 at 3; 136 at 3–4; 165 at 3.

**ARGUMENT**

In awarding attorney's fees under § 505 of the Copyright Act, courts in the Second Circuit apply a "presumptively reasonable fee analysis" which entails the court determining "the reasonable hourly rate for each attorney and the reasonable number of hours expended, and multiplying the two figures together to obtain the presumptively reasonable fee award." *Broad. Music, Inc. v. N. Lights, Inc.*, 555 F. Supp. 2d 328, 333 (N.D.N.Y. 2008) (Sharpe, J.). In making this determination of reasonableness, courts consider factors including

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Id.* (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 493 F.3d 110, 114 n3 (2d Cir.2007)).  For the reasons set forth below, a reduction in the attorney's fees requested by Defendants is warranted.

## I.     Defendants' Requested Fees Related to Their Representation by Kolisch Hartwell Should Be Reduced by 50%

This Court stated in its most recent order that it "appreciates Universal's arguments [] that defendants were also unreasonable throughout this litigation," and that "an overall percentage reduction of the eventual attorneys' fee award is appropriate." Dkt. No. 421 at 6.

In November 2014, Defendants were sanctioned in connection with Plaintiff's motion to compel discovery related to its document demands and interrogatories; Plaintiff was awarded costs and attorney's fees under Fed. R. Civ. P. Rules 37(a)(5)(A) and 37(b)(2)(C). Dkt. No. 64 at 3. In January 2016, Plaintiff was awarded costs in moving again to compel discovery, related to efforts to depose Carol Taylor, and failed attempts to take a 30(b)(6) deposition of MSEI. Dkt.

3

No. 136 at 3–4. In August 2016, the Court awarded Plaintiff costs and attorney's fees for preparation for and attending the depositions of Dr. Lawrence Stotts, and costs and attorney's fees associated with preparing for and arguing the motion to compel. Dkt. No. 165, at 3.

Defendants' well-documented gamesmanship goes beyond the conduct that was addressed by the Court with sanction awards. On multiple occasions, Defendants cancelled depositions at the last minute, once while Plaintiff's counsel was on a plane *en route*. Baranowski Decl. ¶ 7.  Defendants attempted to file three summary judgment motions.  *See* Dkt. Nos. 192, 194, 195. Defendants' counsel filed a meritless motion to quash a proper subpoena in the state of Washington. *See* Dkt. No. 136 at 3.  Defendants issued an improper subpoena after the close of discovery necessitating Plaintiff's successful motion to quash.  Dkt. Nos. 189, 191.

While Defendants do not request fees for former lead counsel David Cooper, the redaction of his entries makes it impossible to determine their appropriateness in the first place. In fact, Defendants provide no reasoning for why they have chosen specifically to exclude Mr. Cooper's fees.  As a result, Plaintiff can only review for appropriateness the recorded billings that are being requested.  These records include ineligible time and should further be reduced for time attributed to bad faith discovery conduct, time related to MSEI's countersuit, failed motions, clerical work, and redundant trial preparation time.  Furthermore, the entries submitted are replete with vague and block-billed entries.  In light of the records submitted by Kolisch Hartwell and the tactics pursued by this firm throughout discovery, a 50% reduction is warranted for the fees requested for Kolisch Hartwell's billings.

### A.    Hours Related to Bad-Faith Conduct Should be Excluded From The Fee Award

Second Circuit and others courts have ruled on many occasions that a party can be denied attorney's fees in relation to the party's misconduct during discovery even if that party ultimately

prevails. *See Mugavero v. Arms Acres, Inc.*, 2010 WL 451045, at *11 (S.D.N.Y. 2010) (holding the prevailing plaintiff was "not entitled to attorneys' fees and costs associated with her discovery abuses, including time spent on correspondence related to these issues"); *see also Connolly v. Nat'l Sch. Bus Serv., Inc.*, 177 F.3d 593, 598 (7th Cir. 1999) (upholding district court judge's reduction of lodestar calculation by a third based on its view that the requesting party's litigation tactics had "unreasonably delayed resolution of the claim"); *Meyler v. Comm'r of Soc. Sec.*, 2008 WL 2704831, at *3 (D.N.J. 2008) (reducing attorney's fees award because prevailing plaintiff's counsel engaged in "conduct that unduly and unreasonably protracted the final resolution of the matter in controversy" and stating "[e]quity dictates that the award be reduced because of Plaintiff's counsel's *persistent misconduct*") (emphasis added).

As such, Defendants should not be entitled to fees relating to discovery practices where Defendants were sanctioned by the Court.  This includes:

- Defending Plaintiff's Motion to Compel of October 24, 2015, Dkt. No. 55, for which Plaintiff was awarded fees, Dkt. No. 64 at 3;

- Defending Plaintiff's Motion to Compel of December 21, 2015, Dkt. No. 129, for which Plaintiff was awarded fees, Dkt. No. 136 at 3–4;

- Defending Plaintiff's Motion to Compel of July 22, 2016, Dkt. No. 158, for which Plaintiff was awarded fees, Dkt. No. 165 at 3; and

- 30(b)(6) Depositions for Dr. Stotts, for which Plaintiff was awarded costs and fees as part of the granting of Plaintiff's motion to compel based on Defendants' failure to prepare the witness and/or designate a witness with knowledge of the requested topics, *see* Dkt. No. 165 at 3.

It is clear from the submitted records that Defendants have included many hours spent toward these discovery abuses in their application that should be taken into account when considering an appropriate reduction.  *See* Baranowski Decl., ¶ 8 (citing to Schedule B).

5

**B.     Hours Related to Unsuccessful Pleadings Should be Excluded From The Fee Award**

In addition, Second Circuit courts have also held that unsuccessful pleadings made by a party requesting attorney's fees can be excluded from an attorney's fees award to the extent the hours spent on the unsuccessful pleadings are severable from the hours spent on successful pleadings. *See Noel v. New York State Office of Mental Health Cent. New York Psychiatric Ctr.*, 2008 WL 11355380, at *2 (N.D.N.Y. 2008) (reducing total hours in lodestar calculation finding requesting party not entitled to fees for time spent on unsuccessful post-trial motion since the motion was "separate and apart from the action on which the plaintiff prevailed and it was denied in its entirety"); *DeMarco v. Ben Krupinski Gen. Contractor, Inc.*, 2014 WL 3696020, at *8–9 (E.D.N.Y. 2014) (stating "fees should not be awarded for time expended on an unsuccessful motion" and explaining "work on an unsuccessful claim based on different facts and legal theories than the successful claims cannot be deemed to have been expended in pursuit of the ultimate result achieved and therefore no fee may be awarded for services on the unsuccessful claim") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

The time spent on the following discovery motions should not be entitled to fee shifting:

- Defendants' denied Motion to Dismiss of July 7, 2015, Dkt. No. 97;

- Defendants' denied Motion to Strike of October 16, 2015, Dkt. No. 107;

- Time related to MSEI's unsuccessful Motion to Compel of December 21, 2015, Dkt. No. 128; *see also* Dkt. No. 136 at 4 (denying Defendants' motion);

- Defendants' Failed Motion to Quash a Proper Subpoena in the United States District Court for the Western District of Washington, *see* Dkt. No. 136 at 3 (indicating that Defendants would produce Carol Taylor pursuant to the ruling in that district);

- Defending Universal's Successful Motion to Quash Defendants' Improper Subpoena of October 10, 2016, Dkt. No. 189; *see also* Dkt. No. 191 (granting motion);

- Time related to MSEI's attempt to file multiple summary judgment motions and the Court hearing regarding those attempts, *see* Dkt. Nos. 185, 186, 187, 192, 193, 194, 195, Text Only Order of 10/19/2016; and

- Defendants' denied Motion for Reconsideration of March 10, 2017, Dkt. No. 230; *see also* Dkt. No. 255 (denying motion).

These pleadings constitute unnecessary motion practice by Defendants and are further evidence of cost-adding, excessive tactics during discovery.  It is clear from the records that Defendants have included many hours spent toward these tasks—hours that should not be considered when making an appropriate reduction.  *See* Baranowski Decl., ¶ 9 (citing to Schedule C).

### C.    Hours Related to Clerical Work should be Excluded From The Fee Award

Kolisch Hartwell's invoices include numerous entries representing clerical work.  Such time is not compensable.  *Berkshire Bank v. Tedeschi*, 2015 WL 235848 at *5 ("[C]ourts generally hold that clerical and secretarial services are part of overhead and are not generally charged to clients.") (internal quotations and citations omitted); *DeMarco*, 2014 WL 3696020, at *9 (highlighting case law in this Circuit explaining that "downloading documents" and "reorganizing the file" are clerical, non-reimbursable tasks).

For example, Kolisch Hartwell timekeeper JMC regularly billed two hours per day for "Review and manage client document directory; review, manage and analyze emails; review, manage and analyze directory of Court" or similar work.  *See* Baranowski Decl. ¶ 10 (citing to Schedule D).  This habitual billing practice included many entries on days when other timekeepers do not appear to have been working on the case.  *Id.*  Plaintiff has reviewed the approximately 500 pages of Kolisch Hartwell bills produced by Defendants and believes Kolisch Hartwell billed approximately 841.3 hours of JMC's time at $105/hour for a total cost of $88,336.50, with a large amount of time attributable to these clerical entries.  *Id.*

Similarly, Kolisch Hartwell timekeeper CDL routinely billed between 3 and 5 hours for

tasks including some variation of "Review of incoming emails and file into appropriate file and subfolder as needed; review of Pacer and electronic case file to ensure electronic file is up to date; no new documents to add; review current docketing reports to see need for assistance for upcoming deadlines." *Id.* CDL also routinely billed hours for "working with electronic case file reorganization and making screen prints of each file folder." *Id.* Plaintiff has reviewed the approximately 500 pages of Kolisch Hartwell bills produced by Defendants and believes CDL billed approximately 1,031.6 hours at $95/hour for a total cost of $98,002, with a large amount of time attributable to these clerical entries. *Id.*

### D.   Hours Spent by Kolisch Hartwell Related to MSEI's Case vs. Universal Should be Excluded from the Fee Award.

Defendant MSEI asserts that is "not seeking any attorneys' fees related to the companion case, *MSEI v. Universal* (13-cv-1144)." Dkt. No. 422 at 5, n3; *see also* Dkt. No. 424 at 5, n1. Despite this assertion, a number of entries totaling $18,215.00 clearly relate to the companion case and should be excluded from the fee award. Baranowski Decl., ¶ 11 (citing to Schedule E).

### E.   Hours Spent by Kolisch Hartwell Related to Trial Preparation Should be Excluded From the Fee Award

While Defendants are not seeking any time for Kolisch Hartwell attorneys after the new trial counsel entered the case, Kolisch Hartwell still provides a total of $15,902.50 for trial preparation prior to the admission of new counsel. *Id.* at ¶ 12 (citing Schedule F). These entries are duplicative of the actual trial team's work and should be removed from the fee award.

### F.   A Percentage Reduction is Warranted Due to the Prevalent Deficiencies in the Kolisch Hartwell Billing Entries

A party requesting attorney's fees has the burden to document the hours reasonably expended by each attorney, the date, the nature of the work done, and the reasonable hourly rates. *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). "Courts may reduce the number

of hours in a fee application where the billing information submitted by the claimants is too vague to sufficiently document the hours claimed." *Mugavero*, 2010 WL 451045, at *7 (S.D.N.Y. 2010) (citing *Kirsch*, 148 F.3d at 172) (internal quotations omitted); *Stevens v. Rite Aid Corp.*, 2016 WL 6652774, at *4 (N.D.N.Y. 2016) ("mere characterization of the type of work done, without specifying the purpose and specific subject matter of the task are insufficient") (internal quotation omitted). Entries that lack sufficient detail do not permit the court to evaluate the entries for reasonableness and "do not meet the standard for an award of fees."*Mugavero*, 2010 WL 451045, at *7 (S.D.N.Y. 2010); *Bowen v. Stephenson*, 2014 WL 6610041, at *3 (N.D.N.Y. 2014) (Sharpe, J.) (applicant's vague entries did not "give the court any idea of the work performed"); *see United States ex rel. Rubar v. Hayner Hoyt Corp.*, 2018 WL 566448, at *7 (N.D.N.Y. 2018) (Sharpe, J.) (applying an across-the-board reduction of 10% to account for the "vagueness in the annexed invoice entries"); *see also Kirsch*, 148 F.3d at 172 (upholding district court's reduction of award by 20% for vague entries: "letter to court," "staff conference," and "work on motion"); *Trs. of the Bricklayers v. Helmer–Cronin Constr., Inc.,* 2005 WL 3789085, at *5 (S.D.N.Y. 2005) (20% reduction in the total number of hours billed where the majority of entries contained vague statements: "Study and Review file," "Telephone call with client," "Letter to Silkey," and "Research"); *Levy v. Powell*, 2005 WL 1719972, at *7 (E.D.N.Y 2005) (reducing hours by 35 % for "vagueness, excessiveness, and redundancy," for entries including "review misc. administrative papers," "review correspondence from client," "Note to Aramony, Esq.," and "telephone conference with client.").

Likewise, block billing, or "enter[ing] the total daily time spent working on a case, rather than itemizing the time expended on specific tasks" is disfavored because it "renders it difficult [for the Court] to determine whether, and/or the extent to which [] work done by [the] attorneys

is duplicative or unnecessary." *Pope v. City of Albany*, 2015 WL 5510944 (N.D.N.Y. 2015), at

*12; *see Stevens*, 2016 WL 6652774, at *5 (N.D.N.Y. 2016) (counsel's block billing "ma[de] it

difficult if not impossible" to "assess the reasonableness of much of the time"); *Hines v. City of

Albany*, 613 F. App'x 52, 55 (2d Cir. 2015) (affirming 30% reduction  of applicant's requested

hours in part for prevalence of block billing, noting block billing is "disfavored" because it can

"lack the specificity for an award of attorneys' fees").

In the instant case, Kolisch Hartwell's submitted records are replete with vague entries

lacking detail and many entries are block-billed, further warranting a reduction.  Baranowski

Decl., ¶ 13 (citing to Schedule G).

## II.    Defendants' Trial Counsel's Requested Attorney's Fees Should Be Reduced Because the Hourly Rates Are Unreasonable.

In calculating a presumptively reasonable fee, the Second Circuit "forum rule" "generally

requires use of the hourly rates employed in the district in which the reviewing court sits[.]'"

*Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 26 (N.D.N.Y. 2015) (quoting *Bergerson v. New York

State Office of Mental Health, Central New York Psychiatric Center*, 652 F.3d 277, 290 (2d Cir.

2011)). There is a strong "presumption in favor of application of the forum rule," and deviation

is appropriate only where the applicant seeking a higher out-of-district rate can meet its burden

of making a particularized showing that objective factors warranted the use of higher-priced, out-

of-town counsel, *and* a likelihood that in-district counsel would produce a "substantially inferior

result."  *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175-176 (2d Cir. 2009).

Out-of-district rates are only justified in certain circumstances that are clearly not present

here.  In *Simmons*, the Second Circuit clarified:

> The party seeking the award must make a particularized showing, not only that
> the selection of out-of-district counsel was predicated on experience-based,
> objective factors, but also of the likelihood that use of in-district counsel would
> produce a substantially inferior result. . . .  Among the ways an applicant may

> make such a showing is by establishing that ***local counsel possessing requisite experience were unwilling or unable to take the case***, or by establishing, ***in a case requiring special expertise, that no in-district counsel possessed such expertise***.

575 F.3d at 175–76 (emphasis added).  Defendants have made neither of these showings and have failed to meet the standard outlined in *Simmons*.  Instead, Defendants rely on an unsupported statement by local counsel (Mr. Rose) that no law firm in the Northern or Western Districts has the capability to provide representation on a case like this, which is not supported by any evidence.  *See* Dkt. No. 422 at 15 (citing Dkt. No. 422-1 at 3–4).  Such statements have already been rejected by this Court as supporting out-of-district fees, *see Pope*, 2015 WL 5510944, at *7 (rejecting local counsel's opinion that the Northern District lacked capable firms), and, these statements are unsupported by fact.

### A.    Defendants Have Failed to Show that No Firms in the District Were Willing or Able to Take the Case

Defendants have not submitted any evidence showing that Defendants attempted to find trial counsel in the Northern District, or anywhere outside New York City, and Defendants thus are not entitled to outside rates.  *See Green v. City of New York*, 403 F. App'x 626, 628 (2d Cir. 2010) (affirming Eastern District court's denial of request to award fees calculated with higher Southern District rates: "[a]ppellants have made no showing, beyond mere conjecture, that local counsel possessing requisite experience were unwilling or unable to take the case, or that no in-district counsel possessed expertise necessary to litigate the case").  Defendants' submission by Mr. Rose does not even attempt to show that MSEI or MTA considered firms in this district for their trial counsel.  While Mr. Rose's declaration states that he performed an assessment of Nixon Peabody's ability to handle the trial, it is clear from the billing entries of Mr. Tulchin that Nixon Peabody was chosen by S&C to perform the duties of local counsel.  Dkt. No. 422-2 at 22 (March 24, 2017 entry of David B. Tulchin: "Telecon John Greenthal and other efforts to locate

suitable local counsel…").  In other words, MSEI did not attempt to hire Nixon Peabody as its

trial counsel and then look to S&C because Mr. Rose assessed that Nixon Peabody did not have

the requisite resources.  *Compare* Dkt. No. 422-2 at 22 (March 24, 2017 entry of David B.

Tulchin: "Telecon John Greenthal and other efforts to locate suitable local counsel…"), *and* Dkt.

Nos. 422-1, at 3, ¶¶ 9–11.  Rather, MSEI first hired S&C as trial counsel, and S&C then found

Nixon Peabody to act as local counsel.

Similar to Mr. Rose's opinion on all law firms in the Northern and Western Districts,

local counsel in *Pope* claimed to "be aware of no other firm in the Albany area, or the Northern

District of New York, that would have the resources . . . to commit to a case such as this." 2015

WL 5510944, at *7. This Court rejected that opinion, and rejected the application of out-of-

district rates, emphasizing that neither the Plaintiffs nor their counsel "tried to find another firm

in the area, with comparable local rates, to share the financial and time burdens of the case." *Id.*

Further, Mr. Rose's assessment that his firm would not be able to marshal the resources

necessary for this litigation is not evidence that the Northern District is devoid of firms capable

of doing so. *See* Dkt. No. 422-1, at 3, ¶¶ 9–11.  Likewise, Joan M. Schmidt's declaration makes

clear that a driving if not the primary force behind the hiring of S&C was Ms. Schmidt's prior

working experience with Mr. Tulchin and her resulting familiarity with his firm—not a dearth of

capable firms in the Northern District. Dkt. No. 422-4 at 1–2, ¶¶ 4–5.  Defendants have failed to

meet the showing required in this Circuit that no firms were willing or able to take the case

because Defendants have provided no evidence that any local firms were asked to be trial

counsel.  *Simmons*, 575 F.3d at 176.

**B.     Numerous Local Firms Possess Complex Intellectual Property Litigation and Trial Expertise**

Northern District firms with reputable intellectual property law litigation practices are numerous.  Defendants fail to mention the numerous favorable results achieved by Northern District firms in complex intellectual property disputes.

A non-exhaustive list of examples include: **Bond, Schoeneck & King**, *see e.g. Angiodynamics, Inc. v. Biolitec, Inc.*, Case No. 1:08-cv-00004-LEK-RFT (N.D.N.Y. 2012) (Albany, for plaintiff, obtaining $ 16,463,846.94 jury award for plaintiff against defendant for refusing to indemnify in patent infringement suits); **Girvin & Ferlazzo**, *see e.g. Member Services Inc. et al. v. Security Mutual Life Insurance Co. of New York et al.*, 3:06-cv-01164-DEP (N.D.N.Y. 2011) (Albany, co-representing plaintiff, obtaining $26 million dollar jury verdict for plaintiff in copyright infringement action with additional misappropriation of trade secrets, unfair competition, unjust enrichment, fraudulent misrepresentation claims); **Barclay Damon**, *see e.g. PPC Broadband, Inc. d/b/a PPC v. Corning Optical Communications RF, LLC*, 5:11-cv-00761-GLS-DEP (N.D.N.Y. 2015) ((Albany, Syracuse, and Boston, for Plaintiff, obtaining $23.85 million jury verdict in patent infringement lawsuit), and *Paramount Pictures Corp. v. Hopkins*, 2008 WL 314541 (N.D.N.Y. Feb. 4, 2008) (prevailing copyright plaintiff represented by then-called Hiscock & Barclay Syracuse attorneys)*;* **Heslin Rothenberg Farley & Mesiti P.C.**, *see e.g. Levine v. Landy*, 832 F. Supp. 2d 176 (N.D.N.Y. 2011) (plaintiff's copyright claims survive motion to dismiss; plaintiff represented by Heslin), and *Mackenzie Architects, PC v. VLG Real Estates Developers*, LLC, 2016 WL 4703736 (N.D.N.Y. Sept. 8, 2016) (alleged copyright infringement and breach of contract action; certain defendants' motions to dismiss granted and plaintiff's copyright claims survive motion to dismiss; both parties represented by Albany attorneys including Whiteman, Osterman & Hanna, LLP, Heslin Rothenberg Farley & Mesiti

13

P.C., Tabner, Ryan Law Firm); **McNamee, Lochner  P.C.**, *see e.g. Kwan v. Schlein*, 441 F. Supp. 2d 491 (S.D.N.Y. 2006) (defendants succeed in dismissing plaintiff's complaint alleging copyright infringement, breach of contract, and unfair competition, represented by then-called McNamee, Lochner, Titus & Williams, P.C.); and **Mackenzie Hughes, LLP**, *see e.g. Frink Am., Inc. v. Champion Rd. Mach. Ltd.*, 48 F. Supp. 2d 198 (N.D.N.Y. 1999) (defendants' motion for summary judgment granted on plaintiff's state and federal trademark infringement, federal and state trademark dilution, copyright infringement, trade dress infringement, breach of contract, misappropriation of trade secrets, tortious interference with business relations and federal unfair competition claims, represented by then-called Mackenzie Smith Law Firm, Syracuse).

Having put forth only irrelevant opinions and inapplicable reasoning, Defendants present zero evidence that in-district counsel did not possess the required expertise for this case, and that the selection of in-district counsel would have produced a "substantially inferior result." Defendants have failed to meet the showing required in this Circuit to overcome the presumption that the prevailing in-district rates apply. *Simmons*, 575 F.3d at 176.

### C.   Defendants Supplemental Arguments in Support of Out-of-district Rates are not Persuasive

Defendants' additional arguments for applying out-of-district rates are not persuasive and are inconsistent with *Simmons*.

Defendants cite to *Diplomatic Man, Inc. v. Nike, Inc.*, for the proposition that because they paid their counsel's bills, that fact is "prima facie evidence if the reasonableness of the amount as whole." Dkt. No. 422 at 16, ¶ 1 (citing 2009 WL 935674, *5 (W.D.N.Y. 2009)). However, that case does not relate to the determination, required by *Simmons*, that applying out-of-district rates is justified by the applicant's particularized showing.  Rather, *Diplomatic Man* was a case brought in the high-fee Southern District and related to the reasonableness of

determining rates in that district.  It did not pertain to an out-of-district inquiry analysis in which

a high fee firm litigates in a lower fee district.  Further, this Court has rejected arguments related

to whether a client has paid their bills when made in support of applying out-of-district rates.

*See Pope*, 2015 WL 5510944, at *7 (rejecting applicant's argument that its clients routinely pays

their bills).  Payments made to counsel are not part of this Court's inquiry as to whether out-of-

district rates are to be applied according to *Simmons.  See,* 575 F.3d at 175–76.[2]

Defendants also argue that only a New York City firm can litigate high stakes litigation.

Defendants' cited authority is unavailing, as this was not a "multi-billion dollar claim." *Ceglia* v.

*Zuckerberg*, 2012 WL 1574747, at *3 (W.D.N.Y. 2012).  Further, *Ceglia* is inapposite.

Defendants' citation omits that the evidence the requesting party had to marshal to defend the

case was highly specialized:

> [S]ignificantly, resolution of the heavily contested issue of the alleged contract's
> authenticity is an issue requiring computer forensic procedures not typically seen
> in this court, including examination of numerous computers and Internet accounts,
> extraction of remnants of information as much as nine years old, and handwriting
> and document authentication experts, as well as legal counsel possessing the
> litigation skills and technical knowledge required to marshal such evidence to
> defend the action against Plaintiff's multi-billion dollar claim.

*Id.*  Here, there were no computer forensic procedures at issue requiring an analysis of numerous

computers and internet accounts.

Defendants consistently characterize Plaintiff's positions related to their case and the

relief requested as "frivolous" and "meritless."  Dkt. No. 422, at 2–3.  Defendants' posture is

---

[2] Defendants have, via footnote, argued that Universal's hiring of Williams & Connolly LLP for
its appeal of this case to the Second Circuit is dispositive of their claim for applying out-of-
district rates, despite submitting no evidence as to the rates or billing structure in this
representation. *See* Dkt. No. 422 at 16, n7.  The Second Circuit has rejected this fee parity "me-
too" argument. *See Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1059
(2d Cir. 1989) ("[T]he prevailing market rate test does not mandate equal fees for opposing
counsel.").  Universal has not argued that it should be entitled to payment for Williams &
Connolly fees at an out-of-district rate, making Defendants' argument irrelevant.

entirely at odds with their argument that this case was so complex that no in-district law firms could defend it.  Further, Defendants do not cite any case where either the amount of damages sought or the request for injunctive relief is considered a basis for this Court to apply out-of-market rates as required by established Second Circuit law under *Simmons. See* 575 F.3d at 176.

The extent of damages Plaintiff sought and Plaintiff's request for an injunction[3] are irrelevant to Defendants' burden to show that use of in-district counsel would produce a substantially inferior result under *Simmons*.

Defendants' attempt to justify their out-of-district rates also leans heavily on the limited time new counsel had to prepare for this case and trial. *See* Dkt. Nos. 422-1 at 3, ¶ 11; 422-2 at 2, ¶ 6; 422 at 6.  However, Defendants have submitted no evidence that they were rejected by the various local intellectual property litigation firms due to time constraints.  Rather, Defendants hired S&C and then sought local counsel with Nixon & Peabody as shown above.  Even if it can be argued that time constraints necessitated higher priced law firms, it was Defendants' choice to retain new counsel, and to do so as late as they did.  Defendants' choice not to hire counsel that "had sufficient experience in intellectual property matters and the resources and skill necessary to prepare quickly for a jury trial" earlier does not justify the application of out-of-district rates under *Simmons. See* Dkt. No. 422-2, at 2, ¶ 6.

> **D.     The Prevailing Rates in this Forum are Substantially Lower than the Rates of Defendants' Counsel**

In January 2018, this Court found that "a reasonable, paying client seeking attorney services would be willing to pay an hourly rate of $450.00 for [a partner with thirty years' experience in the particular context of the case: False Claims Act], $400.00 for [a partner with ten years' experience in the particular context of the case: False Claims Act], $280.00 for

---

[3] Defendants were aware of Plaintiffs damages claims and request for injunction well before trial counsel S&C and Kaplan Rice entered the case.

[associates], and $150.00 for support staff." *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 2018 WL 566448, at *6 (N.D.N.Y. 2018) (Sharpe, J.); *see also Malibu Media, LLC v. Ofiesh*, 2017 WL 2633526, at *3 (N.D.N.Y. 2017) (calculating attorney's fees award at $250.00 per hour for counsel and $85.00 per hour for paralegals in copyright infringement case).[4] Accordingly, Defendants' attorney's fees award should be calculated using the prevailing Northern District rates as set forth in the following rate schedule:[5]

| Timekeeper | Hourly Rate |
| --- | --- |
| Nixon Peabody, LLP | |
| Andrew C. Rose | $450.00 |
| Kevin Dayer | $150.00 |
| Sullivan & Cromwell, LLP | |
| David B. Tulchin | $450.00 |
| Thomas C. White | $400.00 |
| Adam R. Brebner | $400.00 |
| Anuja D. Thatte | $280.00 |
| Jacob B. Lieberman | $280.00 |
| Additional S&C Lawyers | $280.00 |
| Legal Assistants, Research Librarians, E-Discovery and Technical Services | $150.00 |
| Kaplan Rice, LLP | |
| Howard J. Kaplan | $450.00 |
| Marie E. Christiansen | $280.00 |

---

[4] The requesting party also has the burden of showing that the nature of work done by legal assistants (paralegals) and administrative staff is "unusually complex" so as to justify an above-market rate. *Themis Capital v. Democratic Republic of Congo*, 2014 WL 4379100 at *8 (S.D.N.Y. 2014). In *Themis*, the plaintiffs sought reimbursements for rates ranging from $125 to $340 per hour for paralegals. *Id.* The court limited the paralegal rate to the Southern District's prevailing paralegal rate of $125 because it was not persuaded that the higher rates were reasonable despite the client having actually paid them. *Id.* Defendants seek much higher paralegal fees with no support as to how the work performed was complex to an extent warranting the out-of-district rates. *See* Dkt. No. 422-3 at 4, ¶ 12 (Mr. Kaplan stating Paralegal rate of $170); Dkt. No. 422-1 at 5, ¶ 17 (Mr. Rose stating Paralegal rate of $225); Dkt. No. 422-2 at 16, ¶ 43 (Mr. White stating "effective rates": Legal Assistant rate at $145–$345; Research Librarian rate at $361; and E-Discovery and Technical Services rate at $302–$361).

[5] Plaintiff seeks no adjustment to the hourly rates for the work performed by Kolisch Hartwell, P.C., because they are commensurate with prevailing 2018 Northern District rates. *See* Dkt. No. 424-1; *United States ex rel. Rubar v. Hayner Hoyt Corp.*, 2018 WL 566448, at *6 (N.D.N.Y. 2018).

| Alan Pfeffer | $280.00 |
| Ann-Marie Tesar | $280.00 |
| Ian Misrok | $150.00 |
| Cathy Faber | $150.00 |

When appropriate in-district rates are applied, the total forum fees for the hours expended by the Defendants post-summary judgment counsel is reduced to $2,261,261.00.  Baranowski Decl., ¶ 14 (citing to Schedule H).

**III.   Defendants' Trial Counsel Fees Should Be Further Reduced After the Application of In-District Rates.**

The Second Circuit has endorsed the district courts' discretion to use an across-the-board percentage reduction "as a practical means of trimming fat from a fee application." *Kirsch*, 148 F.3d at 173 (2d Cir. 1998); *see Houston v. Cotter*, 234 F. Supp. 3d 392, 410 (E.D.N.Y. 2017) (applying a 50% across-the-board reduction to address the "fat" in plaintiff's fee application which was replete with block-billed entries, vague descriptions, and reflected excessive staffing and time spent by counsel getting up to speed); *Erickson Prods., Inc. v. Only Websites, Inc.*, 2016 WL 1337277, at *4 (S.D.N.Y. 2016) (reducing plaintiff's requested attorney's fees by 40% because "vague entries ... and ... use of block-billing ... impede the Court's ability to ... make a meaningful review of the reasonableness of the work performed and the hours claimed."); and *Pope*, 2015 WL 5510944, at *12, 14 (imposing reduction of 10% to address block-billing deficiencies, and an additional 40% as to one attorney whose billing entries were vague).

Again, applying in-district rates brings Defendants' post-summary judgment fees to $2,261,261.00.  Baranowski Decl. ¶ 14; *see also id.* at Schedule H.  However, like in *Houston*, a 50% reduction to reduce the award from $2,261,261.00 to $1,130,630.00 for post-summary judgment fees is warranted to address the sheer excess of professionals working on the case, the time Defendants' trial counsel had to spend to get up to speed, vague and block billing entries, and entries that are ineligible for fee shifting.

**A.      Defendants' Trial Counsel Fees Should Be Reduced Based on the Excessive Number of Attorneys and Staff Used in Preparation of and During Trial**

The Second Circuit supports reducing the lodestar figure when overstaffing is found in the requesting party's fee request.  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987) ("ample authority supports reduction in the lodestar figure for overstaffing as well as for other forms of duplicative or inefficient work") (internal quotation omitted); *Gen. Elec. Co. v. Compagnie Euralair, S.A.*, 1997 WL 397627, at *4 (S.D.N.Y. 1997) ("[i]t is well recognized, of course, that when more lawyers than are necessary are assigned to a case, the level of duplication of effort increases").  Courts determine the reasonableness of the number of attorneys and staff for which fees are requested by making "an assessment of what is appropriate for the scope and complexity of the particular litigation." *C.G. v. Ithaca City Sch. Dist.*, 2012 WL 4363738, at *4 (N.D.N.Y. 2012) (Sharpe, J.), *aff'd*, 531 F. App'x 86 (2d Cir. 2013).

New York District Courts have consistently applied large across-the-board reductions as a result of overstaffing.  For example, in *Houston*, a New York District Court applied a 50% across-the-board reduction to "trim the excess from counsel's billing entries" in part because "the matter was overstaffed," noting that "more than 2000 hours" had been spent in preparation for an 8 day trial.  234 F. Supp. 3d at 407. [6]

Here, the Defendants billing is far more egregious.  Where the court in *Houston* noted the excessive nature of billing more than 2,000 hours for the preparation of an 8-day jury trial, Defendants in this case seek a fee award for 7,556.4 hours of total time including 5,486.8 hours

---

[6] *See also Pope*, 2015 WL 5510944, at *13 (applying an additional 40% reduction to the billing of the requesting party's firm's associates' time because of "overstaffing and excessive hours billed" where there was a "larger pattern of consistent overstaffing" of which "[t]he proliferation of intra-office conferences is a symptom"); *Stevens*, 2016 WL 6652774, at *5 (imposing a 30% reduction because of overstaffing"); and *Themis*, 2014 WL 4379100, at *5 (removing all entries from all attorneys who billed less than 25 hours and applying an additional 10% reduction across the board because of the "sheer number of attorney timekeepers who billed time on the case" (48 in total)).

of attorney time billed post-summary judgment in preparation for a 6-day trial.  Baranowski

Decl. ¶ 15 (citing Schedule I).

Defendants utilized a stunning total of 86 professionals for which they seek fees.

Baranowski Decl. ¶ 3–4 (citing Schedule A).  This included 33 professionals during discovery

and 53 professionals after new trial counsel was retained, 45 of which represented a single party,

MSEI.  *Id.*  While the duplicative and excessive nature of tasks is readily apparent from the

number of professionals used by Defendants on the case, there are also specific time entries that

clearly indicate duplicative tasks and overstaffing.  Baranowski Decl., ¶ 16 (citing Schedule J).

In addition to the 5,486.8 of attorney time, the additional 2069.6 hours of staff time was

also excessive. *See* Baranowski Decl., ¶ 15. For example, not only are the eleven "E-Discovery

and Technical Services" personnel excessive, the entries of these personnel appear clerical in

nature, have no relation to legal services, and are largely so vague as to preclude any assessment

of reasonableness. For example, Ken Chen's April 1, 2017 entry of an hour for "[p]rocess COC

0002 data into Viewpoint. Extract and OCR. Create processing report and update process form.

Create view for case team." *See id.* at ¶ 17 (citing Schedule K).  These descriptions do not

indicate that any understanding of the case or legal expertise was required. *Pope*, 2015 WL

5510944 at *15 (distinguishing clerical non-recoverable tasks from tasks requiring an

"understanding of the case"); *Bosket v.* NCO Fin. Sys., Inc., 2012 WL 4093023, at *4 (N.D.N.Y.

Sept. 17, 2012) (Kahn, J.) (computer-related tasks found not compensable). Many of these

entries are also for conversations among these personnel. *Id.* at *13 (indicating the problem of

excessive staffing proliferates "intra-office conferences").

It is also clear that excessive time was spent on certain tasks, for example, over 90 hours

were spent on the logistics of researching and setting up Mr. Rickard's video-testimony, and

Defendants did not call Mr. Rickard at trial. Baranowski Decl. ¶ 16 (citing Schedule J).

It cannot possibly be argued that this volume of professionals and volume of hours billed were necessary to prepare for a six day trial, let alone a case characterized by Defendants as having no "reasonable view of the evidence [that] supported Universal's claims."

**B.     Defendants' Trial Counsel Fees Should Be Reduced Based on Costs of Getting up to Speed**

Hours spent by new counsel getting up to speed as a result of a client's change of counsel are not appropriately included in fee award calculations, even where the incurrence of the fees from those hours was appropriate. *Central Grp. Int'l, L.L.C. v. New York One Cafe Inc.*, 2007 WL 869587 at *10 (E.D.N.Y. 2007) (reducing fee award in copyright infringement case in connection with the plaintiff's new counsel by 15%  for the "surplus hours resulting from the substitution of new counsel"); *Kirsch*, 148 F.3d at 172 (2d Cir. 1998) (upholding 20% reduction of fee award in part because a junior associate was brought into the middle of the litigation "and no doubt had to expend significant time familiarizing herself with the history and status of the case").  This is especially the case where a change in counsel occurs after the court decides summary judgment motions.  *Ganci v. U.S. Limousine Serv. Ltd.*, 2015 WL 1529772, at *6 (E.D.N.Y. 2015). In *Ganci*, the plaintiff changed its counsel after the court's decision on summary judgment, and the court found the defendants were "not obliged to pay for the time associated" with the change.  *Id.* at *7. The court explained:

> [D]efendants should not bear the cost of the inefficiencies **necessarily created** by plaintiff's change in representation. Moreover, the change in counsel occurred before trial, but after the Court decided the cross-motions for summary judgment, and as a result plaintiff's new counsel was entirely unfamiliar with a lengthy case record at the time the firm assumed representation. In addition to having to spend substantial time becoming familiar with all of the discovery in the case, there were other inefficiencies created by the timing of the change in counsel that are apparent in the time records (and were clear to the Court in its supervision of the case).

*Id.* at *6 (emphasis added).  The court applied a 25% across-the-board percentage cut in hours to address the surplus time inherently spent. *Id.* at *7.

New counsel for Defendants entered the instant case at the end of March and beginning of April, 2017, a month after the parties' summary judgment motions had been decided.  *See* Dkt Nos. 228, 239, 240–245, 249-251.  Defendants discuss the difficulties of arriving to the case after summary judgment had been decided and at the eve of trial, noting the required "resources to quickly master a complicated set of facts from a voluminous discovery period in just a few months…" Dkt. No. 422 at 17. While specific time entries cannot capture the full extent of increased time added because of the late change in counsel, many of the entries submitted do indicate tasks related to getting up to speed.  Baranowski decl., ¶ 18 (citing to Schedule L).

Defendants should not recover fees for the significant amount of resources spent in mastering a "complicated set of facts" and a "voluminous discovery period," which had an almost four year history at the time their new counsel appeared, including over forty depositions.

### C.   Defendants' Trial Counsel Fees Should Be Reduced Based on Deficient Billing Procedures.

A majority of Defendants' trial counsel's entries are block-billed[7], which "makes it difficult if not impossible" for this Court to "assess the reasonableness of much of the time claimed to have been expended in counsel's [613] pages of billing statements." *Stevens*, 2016 WL 6652774, at *5; *see also supra* Section I.F.  A majority of the entries for Defendants' trial counsel are vague, including the entries that are block-billed.[8]  Baranowski Decl., ¶ 19 (citing

---

[7] For example, Mr. Kaplan's July 20, 2017 entry of 3 hours for "[e]mails; deposition designations; teleconference with AB; document issues; examinations; review re: exhibits." Baranowski Decl., ¶ 19 (citing to Schedule M)

[8] For example, Mr. Tulchin's May 31, 2017 entry of 5.25 hours for "[v]arious trial preparation tasks; conferences with White and Thatte; conference call with Rob Crawford; confer Brebner; review new draft of our brief in opposition to Universal's objection to Peeble's decision"; Mr. Kaplan's June 26, 2017 entry of 8.00 hours for "[p]rep for mock trial; telecons; revise MIL; pre

Schedule M).  It is impossible to assess the reasonableness of these entries, let alone determine to what these tasks even relate.  Trial counsel's extensive block-billing also compounds the problem of their over-staffing the case because it "combin[es] reasonable work with overstaffed work" making the determination of unnecessary work due to overstaffing "impossible to determine." *Pope*, 2015 WL 5510944, at *14. These deficiencies warrant an additional reduction of trial counsel's fees.

> **D.     Defendants' Trial Counsel Fees Should Be Reduced Based on Unsuccessful Motions Brought**

Defendants argue that the fees requested were reasonable because of the many motions *in limine* fully briefed in the case.  Dkt. No. 422 at 18.  While some motions formed the basis for Defendants' successful Rule 50 motion, others were unsuccessful and unnecessary.  For example, MSEI's motion to preclude Plaintiff from using the word "theft," (Dkt. No. 314), motion to preclude Plaintiff from referring to a presumption of validity (Dkt. No. 317), and motion to preclude Plaintiff from arguing or admitting evidence concerning whether MSEI sought an opinion of counsel (Dkt. No. 319) did not argue legal theories presented at trial or disposed of by Defendants' Rule 50 motions. *See DeMarco*, 2014 WL 3696020, at *8–9. Therefore, Defendants' unsuccessful motions *in limine* are further reasons to reduce the fees requested by Defendants rather than a justification for those fees.  Defendants submitted a significant number of fees preparing these unsuccessful motions.  Baranowski Decl., ¶ 20 (citing to Schedule N).

---

trial docs (proposed facts)"; and Ms. Christiansen's June 27, 2017 entry of 8.00 hours for "[p]rep; mock trial; Sharpe order; emails." Baranowski Decl., ¶ 19 (citing to Schedule M).

**E.      Defendants' Trial Counsel Fees Should Be Reduced Based on Hours Spent on State Law Claims that are Ineligible for Fee Shifting**

The forgoing bases independently warrant a 50% reduction in fees.  However, Plaintiff additionally notes that Defendants are asking for all fees incurred in the case to be recovered when only those related to the copyright cause of action should be awarded.  The Second Circuit has held:

> When calculating a lodestar, the number of hours spent on a case should include only those hours spent on claims eligible for fee shifting. *Hours spent solely on common law claims and statutory claims not subject to fee-shifting must be excluded to reflect the default rule that each party must pay its own attorney's fees and expenses.*

*Millea v. Metro North*, 658 F.3d 154, 168 (2d Cir. 2011) (superseded by regulation on grounds unrelated to the attorney's fees decision as set forth in *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) (internal quotations omitted) (emphasis added).  "In an action alleging copyright violations as well as other claims, where the source of the attorney's fees motion is the Copyright Act, the prevailing party may recover only for those attorney's fees expenditures that relate to the copyright claims. The claimant may not recover for attorney billings for other claims brought in the same suit." *Richie v. Gano*, 754 F. Supp. 2d 605, 608 (S.D.N.Y. 2008); *see also Scanlon v. Kessler*, 23 F. Supp.2d 413, 417 (S.D.N.Y. 1998).

Surviving summary judgment were Plaintiff's following claims other than its copyright infringement claim: as against MSEI, breach of contract, as against MTA, unfair competition, unjust enrichment, and as against both Defendants, trade secret misappropriation.[9] *See* Dkt. No. 103.  Hours spent on defending Plaintiff's state law claims should be excluded from the lodestar

---

[9] Defendants made preemption arguments at numerous points throughout this litigation. *See e.g.* Dkt. Nos. 80-2, 305, 330. These arguments were not resolved until the end of trial, when the Court adopted Defendants' Rule 50 motions, Dkt. Nos. 391-93, in its finding that Plaintiff's state law claims were preempted by the Copyright Act, Dkt. No. 396, at 8–9. The Court's decision is currently on appeal the Second Circuit (Case No. 17-2748-cv).

calculation. Each of these claims was brought under New York law, none of them have statutory fee-shifting, and attorney's fees are not provided for them under any contract in this case.[10] Therefore, hours spent on these claims must be excluded from this Court's analysis. *Millea*, 658 F.3d at 168. While the vague nature of Defendants' entries precludes a true accounting of specific time related to Defendants' defense of Plaintiff's state law claims, a number of the submitted entries relate to defending Plaintiff's state law claims. Baranowski Decl., ¶ 21 (citing Schedule O).

## IV.   Conclusion

In light of the above, Defendants' application for attorney's fees should be reduced to $1,793,343.23 ($662,713.23 for the pre-summary judgment period plus $1,130,630.00 for the post-summary judgment period).[11]

---

[10] *See Gevorkyan v. Judelson*, 2015 WL 6508324, at *1 (S.D.N.Y. 2015) ("Under New York law, [] attorney's fees are not recoverable as damages in an action for breach of contract unless expressly agreed to by the parties."); *Hair Say, Ltd. v. Salon Opus, Inc.*, 6 Misc. 3d 1041(A), 800 N.Y.S.2d 347 (Sup. Ct. Nassau County 2005) (misappropriation of trade secrets is a New York state law claim for which attorney's fees are not recoverable absent a contractual provision, statute, or court rule); *Banco Popular N. Am. v. Lieberman*, 75 A.D.3d 460, 461, 905 N.Y.S.2d 82, 84 (2010) (denying attorney's fees where plaintiff's claim sounded solely in unjust enrichment); *Aldridge v. Brodman*, 100 A.D.3d 1537, 1539 (4th Dep't 2012) ("attorneys fees are not recoverable inasmuch as those causes of action allege that defendants committed intentional torts."); *Barbagallo v. Marcum LLP*, No. 11-CV-1358, 2012 WL 1664238, at *7 (E.D.N.Y.) ("Unfair competition is an intentional tort for which contractual and common law indemnification is forbidden").

[11] Plaintiff reiterates its argument that Defendants should not be entitled to any award of fees. Nothing herein should be construed to waive that argument.

Respectfully Submitted,

March 2, 2018                          **SCHMEISER, OLSEN & WATTS**


                                      /s/ Anthony L. Meola
                                      Anthony L. Meola, Esq.
                                      Christopher E. Blank, Esq.
                                      Victor J. Baranowski, Esq.
                                      Jared L. DuJack, Esq.
                                      Alexandra L. Scoville, Esq.
                                      **Schmeiser, Olsen & Watts LLP**
                                      22 Century Hill Drive
                                      Suite 302
                                      Latham, New York 12110
                                      Telephone: 518-220-1850
                                      Fax: 518-220-1857
                                      Email: ameola@iplawusa.com
                                      cblank@iplawusa.com
                                      vbaranowski@iplawusa.com
                                      jdujack@iplawusa.com
                                      ascoville@iplawusa.com

                                      *Attorneys for Plaintiff Universal Instruments
                                      Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that, on March 2, 2018, a true and correct copy of the foregoing

PLAINTIFF UNIVERSAL'S MEMORANDUM OF LAW IN OPPOSITION TO

DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES was served, by filing with the

Clerk of the Court using CM/ECF, on Defendants' counsel of record:

| | |
|---|---|
| Thomas C. White, Esq. | *Via Email:* whitet@sullcrom.com |
| David B. Tulchin, Esq. | *Via Email:* tulchind@sullcrom.com |
| Adam R. Brebner | *Via Email:* brebnera@sullcrom.com |
| | |
| Andrew C. Rose, Esq. | *Via Email:* acrose@nixonpeabody.com |
| | |
| Howard J. Kaplan, Esq. | *Via Email:* hkaplan@kaplanrice.com |
| Marie E. Christiansen | *Via Email:* mchristiansen@kaplanrice.com |

DATED:  March 2, 2018            /s/ Anthony L. Meola
                                 Anthony L. Meola, Esq.
                                 *Attorneys for Plaintiff*
                                 Schmeiser, Olsen & Watts LLP
                                 22 Century Hill Drive, Suite 302
                                 Latham, New York 12110
                                 Telephone: 518-220-1850
                                 Fax: 518-220-1857
                                 E-mail:  ameola@iplawusa.com